Filed 8/24/16  In re R.H. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re R.H., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B269859 (Super. Ct. Nos. J069838, J069839) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>C.H.,<br><br>    Defendant and Appellant. | |

C.H. (father) appeals the juvenile court's orders summarily denying his modification petition and terminating his parental rights to his minor daughters, R.H. and N.H.  (Welf. & Inst. Code, §§ 388, 366.26.)[1]  Father contends he made a prima facie showing in his section 388 petition that entitled him to an evidentiary hearing.  He also claims the court erred in finding that the beneficial parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS AND PROCEDURAL HISTORY

On January 28, 2014, the Ventura County Human Services Agency (HSA) filed a dependency petition as to R.H., born in September 2012, and N.H., born in October 2013. The petition alleged that the children had been removed from their home after their parents were arrested for domestic violence and child endangerment.[2] The parents also have histories of substance abuse that interfered with their ability to care for the children. R.H. and N.H. were placed together in a foster home.

In its jurisdiction and disposition report, HSA recommended that the children be declared dependents and that reunification services be offered to both parents. HSA reported that the parents had three weekly one-hour supervised visits with the children and that the visits had gone well. Father's first drug test was positive for marijuana and methamphetamine, but a second test was negative.

At the conclusion of the uncontested jurisdiction and disposition hearing, the court sustained the petition and granted the parents six months of reunification services. The parents were ordered to comply with their case plans, submit to random drug testing, attend Alcoholics/Narcotics Anonymous (AA/NA) meetings, and refrain from possessing alcohol or illegal drugs. A six-month review hearing was set for August 11, 2014. In April 2014, the court placed N.H. and R.H. in a relative placement (a paternal aunt and uncle) in accordance with section 361.3.

In its six-month report, HSA recommended that reunification services be terminated as to father. As to mother, HSA recommended that services be continued and that a 90-day interim review hearing be set to assess her progress. HSA's recommendation considering father was based on his failure to comply with virtually every element of his case plan. During the review period, he was directed to submit to random drug testing on 12 separate occasions. He only tested twice, and one of those tests was positive for methamphetamine and marijuana. Moreover, he had minimally participated in the available substance abuse services and attended only 14 AA/NA

---

[2] The children's mother is not a party to this appeal.

2

meetings during the six-month period, even though he was required to attend three meetings every week. Father had also failed to participate in parenting education or counseling regarding his domestic violence issues and had missed three scheduled visits with the children. HSA concluded that "[t]he father has not shown his ability to provide for the needs, safety and well-being of his children. The father does not appear to be able to put his children's needs ahead of his own and has not taken accountability for the issues that led to this dependency."

Father set the matter for contested hearing on September 8, 2014. At the conclusion of that hearing, the court continued services for both parents for 90 days pending an interim review hearing set for December 1, 2014. The 12-month review hearing was confirmed for January 26, 2015.

On September 13, 2014, the paternal aunt was arrested for being under the influence of alcohol while the children were present. HSA removed the children and filed a section 387 petition seeking a new placement for them. The court granted the petition and the children were placed in a foster home.

At the time of the 90-day review hearing, father had completed a parenting education course and was scheduled to complete an anger management course with scores of "excellent" in both. He was also participating in a drug program but his attendance was inconsistent. He had missed five out of six random drug tests, although the one test he took was negative. HSA recommended that services be continued for both parents until the 12-month review hearing. HSA made the recommendation "with reservations about the parents' ability to make the necessary progress to allow [HSA] to continue past that date. . . . Should the parents fail to make further progress on their case plan by the 12-month Status Review, [HSA] will have no choice but to recommend terminating the parents['] services."

At the conclusion of the interim review hearing, the court ordered that all prior orders remain in effect and confirmed the 12-month review hearing set for January 26, 2015. In its 12-month review report, HSA recommended that services be terminated

3

as to both parents and that the matter be set for a section 366.26 hearing. Among other things, father had missed three more random drug tests and was about to be removed from his drug treatment program due to his sporadic and inconsistent attendance. Moreover, both parents had yet to advance beyond supervised visitation due to their "inconsistent progress on case plan services and failure to adequately address issues of domestic violence in their relationship . . . ."

The matter was set for a contested hearing on February 17, 2015. In a supplemental report, HSA indicated that father had been terminated from his drug treatment program due to his lack of attendance. Since the status review hearing on January 26, 2015, he had taken one negative drug test but had missed two other opportunities to test. He had also failed to attend a scheduled intake for a domestic violence group therapy program. Mother had recently tested positive for methamphetamine. HSA concluded that "[d]ue to the parents' ongoing inconsistency with progress on case plan services as well as their lack of benefit from services, [HSA] does not feel that there is a substantial probability that the children would be returned to their care in the next 6 months."

At the conclusion of the 12-month review hearing, the court extended services for both parents for an additional six months. The court told father that "[y]ou've been inconsistent, but you have been trying, and I think you get credit for that."

In its 18-month review report, HSA recommended that services be terminated as to both parents and that the matter be set for a section 366.26 hearing. HSA reported that "there have been areas of recent growth for both parents, but unfortunately, this progress was slow in coming, and still does not appear to rise to the level of addressing the core issues in themselves and in their relationship that led to physical violence. . . . [HSA] has grappled with the decision to terminate the parents['] services due to this recent growth, but ultimately, due to the age of the children, their lack of protective capacity, and the severity of the parents' past violence in their relationship, [HSA] cannot in good conscience, recommend the return of the children to the parents'

care at this time. . . . Having run out of time in Court, [HSA] is left with its hands tied, and unable to offer further Family Reunification Services."

At the conclusion of the 18-month review hearing, the court terminated reunification services as to both parents and set the matter for a section 366.26 hearing. Neither parent petitioned for relief from that order.

A contested section 366.26 hearing was held on January 20, 2016. In conjunction with that hearing, father filed a section 388 modification petition seeking reinstatement of reunification services. In support of his petition, father offered that he had been progressing in individual therapy and had recently completed the first half of a substance abuse treatment program. He also claimed that he had maintained his sobriety and that he and mother had not engaged in any further domestic disputes. He further offered that he had maintained regular visits with the children and that the children were bonded and attached to both him and mother. The court summarily denied the petition.

At the section 366.26 hearing, father asserted that the children's adoption was precluded by the beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) The court rejected that assertion, found that the children were adoptable, and terminated parental rights with adoption as the permanent plan.

DISCUSSION

*Section 388 Petition*

Father contends the court erred in denying his section 388 petition without a hearing. We disagree.

Pursuant to section 388, any person having an interest in a dependent child can petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstances or new evidence. The petition must be verified and "shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction." (§ 388, subd. (a)(1).) "The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citations.] There are two

5

parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing. [Citation.] We review the juvenile court's summary denial of a section 388 petition for abuse of discretion. [Citation.]" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

Father does not argue that the court should have returned R.H. and N.H. to his custody. He claims the court should have awarded him six more months of reunification services, in addition to the 18 months of services that had already been offered. The statutory cut-off for reunification services, however, is the point in time 24 months after the child was originally removed from parental custody. (§ 361.5, subd. (a)(4).) Here, the 24-month period was set to expire four days after the date of the hearing. Under the circumstances, the court had no authority to offer an additional six months of services. Moreover, father does not suggest that four days of additional services would have been sufficient to rectify the issues that led to the children's removal, such that they could be returned to him after that short period. Although father offers that "this is not an ordinary case," he offers no authority that would have allowed the court to disregard the statutory limitation set forth in subdivision (a)(4) of section 361.5.

In any event, the court did not abuse its discretion in finding that father had failed to offer new evidence or show that his circumstances had changed such that further services were warranted. As HSA aptly puts it, "The petition mirrored father's actions during the 18-month active reunification period: he participated in some services while ignoring others and ultimately did not complete his case plan." This showing was insufficient to warrant relief under section 388. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 49 [denial of section 388 proper where parent merely showed her

6

"circumstances were changing, rather than changed"].)  Father also failed to show it would be the in children's best interest to continue services.  The children should not be made to wait indefinitely for him to become an adequate parent. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)  There was no abuse of discretion in denying father's petition.

*Beneficial Parental Relationship Exception*

Father contends the court erred in finding that the beneficial parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply.  We are not persuaded.

"Once the [juvenile] court determines a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the . . . exceptions listed in section 366.26, subdivision (c)(1)." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.)  As relevant here, the court must terminate parental rights unless it "finds a compelling reason for determining that termination would be detrimental to the child due to" the circumstance that "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

We review the court's finding that the beneficial parental relationship exception did not apply for substantial evidence.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)  In conducting our review, we presume "in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order."  (*Ibid.*)

Father contends that appellate courts have misinterpreted the beneficial parental relationship exception in a manner that places an undue burden upon parents seeking to invoke the exception.  For example, he finds fault with the conclusion that the exception does not apply unless it "constitutes a '*compelling reason* for determining that termination would be detrimental.'"  (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315, quoting § 366.26, subd. (c)(1)(B)(i).)  He also criticizes *In re Brittany C.* (1999)

7

76 Cal.App.4th 847, to the extent it has been interpreted as requiring a showing that the minor would suffer "great harm" if parental rights were terminated.

We reject these criticisms. The statute expressly states that the reason for declining to terminate parental rights must be a "compelling" one. Moreover, it is well settled that the exception is not established unless the parent shows the strength and quality of his parent-child relationship outweighs the security and sense of belonging the child would gain in a permanent home with new, adoptive parents. (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) The preference for adoption cannot be overcome unless the parent demonstrates that "severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed . . . ." (*Ibid.*) Father effectively claims that he need only demonstrate that the children would receive *any* benefit if the relationship were to continue in order for the exception to apply. This view has already been rejected. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 ["A biological parent who has failed to reunify with a adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during . . . visitation with the parent"].) "The *Autumn H.* standard reflects the legislative intent that adoption should be ordered unless exceptional circumstances exist." (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 51.)

Father failed to make the requisite showing here. Although he arguably maintained regular, supervised visitation with the children during the proceedings, the evidence fails to support the finding that the children would benefit from continuing the relationship to the extent that parental rights could not be terminated. "The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs. [Citation.]" (*In re Angel B.*, *supra*, 97 Cal.App.4th at p. 467.) None of these factors weigh in father's favor. Both children are very young and have spent the majority of their lives in foster care. The children enjoyed their weekly one-

8

hour visits with father and reportedly called him "dad," but exhibited no difficulty in separating from him at the end of their visits. Even if those visits could be characterized as "pleasant and emotionally significant," father's relationship with the children "bears no resemblance to the sort of consistent, daily nurturing that marks a parental relationship." (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) By contrast, the children appear to have a strong bond with their prospective adoptive family and were reported to be "thriving" in their placement. This evidence is sufficient to support the court's finding that the beneficial parental relationship exception did not apply. The cases father cites in support of his claim to the contrary are plainly inapposite.

DISPOSITION

The judgment (orders denying section 388 petition and terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, and Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.